IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE PAUL DAVIS, | : | CIVIL ACTION |
| | : | |
| Petitioner, | : | NO. 06-cv-04079 |
| | : | |
| v. | : | |
| | : | CRIMINAL ACTION |
| UNITED STATES, | : | |
| | : | NO. 03-cr-484 |
| Respondent. | : | |

Giles, J.                                                                                                   November 8, 2007

## MEMORANDUM

Before the court is Petitioner Andre Paul Davis' Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Under 28 U.S.C. § 2255 (Doc. Nos. 28, 32, 45, 46), Petitioner's Response to the Court's Request on Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2255 and Supporting Memorandum of Law (Doc. No. 49), and the Government's Response in opposition thereto (Doc. No. 52).  The issues raised and determined are (1) whether Petitioner is permitted to attack collaterally his prior deportation underlying his illegal reentry conviction on the basis that his motion to reopen has been granted, and (2) whether Petitioner is entitled to habeas relief due to ineffectiveness of counsel for trial counsel's failure to challenge the underlying deportation or advise Petitioner of his right to challenge the deportation.

For the following reasons, the court will hold Petitioner's § 2255 motion in abeyance until the conclusion of pending immigration proceedings because Petitioner has not exhausted his administrative remedies, as is required for a collateral attack of a prior deportation order.  The court also finds that Petitioner's ineffectiveness of counsel claims cannot stand because the exhaustion of administrative remedies requirement was not satisfied.  Because the court holds

Petitioner's § 2255 motion in abeyance, the court declines to reach whether Petitioner's § 2255 is barred by the applicable one-year statute of limitations.

### I. Factual and Procedural History

**A.    Events Leading to Petitioner's Deportation.**

The following facts are undisputed, unless otherwise specified. On February 28, 1984, Petitioner, a Jamaican national,[1] entered the United States at the port of entry of New York City, New York with an immigration visa issued by the American Embassy in Kingston, Jamaica. On March 27, 1990, Petitioner was arrested in New York and, on April 6, 1990, was indicted on three counts of criminal possession of a controlled substance. On October 22, 1990, Petitioner pled guilty to criminal possession of a controlled substance and was sentenced to two to six years.

On August 29, 1990, Petitioner was indicted and charged with frightening a potential witness for the government on July 25, 1990 and with four counts of assault of a police officer and preventing a police officer from performing a lawful duty from events that occurred on August 13, 1990. Petitioner pled guilty to witness tampering and was sentenced to 16 to 48 months.

On November 28, 1990, Petitioner was charged with criminal possession of a controlled substance and returned to prison to finish his sentence.

On February 27, 1992, while Petitioner was serving his sentence, the Immigration and

---

[1] Petitioner was born in Jamaica on June 24, 1967. (Gov't Mem. in Opp. To Def.'s Mot. 4.)

Nationality Service ("INS") issued an Order to Show Cause, advising Petitioner that he was subject to deportation due to his criminal conviction in the drug case. He was ordered to appear for a hearing before an Immigration Judge at a date and time to be set. On August 2, 1992, Petitioner was paroled to the custody of the INS.

On or about September 1992, Petitioner, who was represented by counsel, moved for a change of venue for the deportation proceeding from Harlington, Texas to New York City, which was granted. In this motion, Petitioner conceded deportability.

On February 9, 1993, an immigration hearing was held, at which Petitioner was present and represented by new counsel. At this hearing, Petitioner submitted his application for relief pursuant to Section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c). Section 212(c), the law in effect at the time, and which has since been repealed, provided a discretionary waiver from deportation for an alien lawfully present in the United States for seven consecutive years, even if that alien had committed an aggravated felony, provided that he had not served a prison term of five years. Id.

A hearing on the merits of Petitioner's defense to his deportability was set for June 20, 1994. The immigration court then changed the date of the merits hearing from June 20, 1994 to July 6, 1994. Notice of the change of hearing date addressed to Petitioner was returned to the immigration court on or about July 19, 1994 as undelivered. Neither Petitioner nor his counsel attended the July 6, 1994 hearing. At the July 6, 1994 hearing, Petitioner was ordered deported *in absentia*.

Petitioner contends that he never received notice of the change of hearing date. He avers that the notice was sent to an old address because his counsel failed to notify the immigration

court of Petitioner's change of address.  He alleges that his counsel failed to send Petitioner notice of the July merits hearing and failed to appear on that date on Petitioner's behalf.

On August 8, 1994, a warrant of deportation was issued for Petitioner.  On May 5, 1995, Petitioner returned to prison as a parole violator to serve the remainder of his two to six year sentence.  He was informed that he was prosecuted by the Government pursuant to 8 U.S.C. § 1326(b)(2), and signed his warrant for deportation.

On September 15, 1995, Petitioner was deported from John F. Kennedy Airport in New York to Jamaica.  Prior to his deportation, he signed a Form I-294, which informed him that he could not reenter the United States without permission of the Attorney General.

**B.    Events Leading to Petitioner's Conviction for Unlawful Reentry.**

On an unknown date and at an unknown place, Petitioner subsequently reentered the United States.

On June 3, 2003, Petitioner was detained by Coatesville, PA police on a disorderly conduct charge.  On June 4, 2003, he was arrested by police in Chester County, PA.  Police notified the immigration authorities of his arrest.

On June 9, 2003, a criminal complaint was entered in the U.S. District Court for the Eastern District of Pennsylvania, charging that Petitioner had reentered the United States after having been deported without obtaining permission of the Attorney General in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  In October 16, 2003, Petitioner pled guilty to the reentry charge.  On December 11, 2003, Petitioner was sentenced to 58 months of imprisonment.  Petitioner asserts that during the sentencing hearing, his counsel conceded that Petitioner was deportable.

(See Sentencing Tr. 13:10-25, Dec. 11, 2003.)  During the sentencing hearing, Petitioner indicated to the court that he did not receive notice of the hearing on the merits of his deportation case.  (See Sentencing Tr. 14:17-24, Dec. 11, 2003.)  Petitioner did not appeal his conviction or sentence.

Upon representation of counsel, Petitioner completed his sentence for his conviction for illegal reentry on August 20, 2007, and is currently in the custody of the Department of Homeland Security.  (Gov't Mem. in Opp. To Def.'s Mot. 3.)  The Government concedes that he continues to be in custody for 28 U.S.C. § 2255 purposes until he completes his three-year term of supervised release.  (Id. (citing United States v. Essing, 10 F.3d 968, 970 n.3 (3d Cir. 1993) (holding that a defendant who filed a Section 2255 petition after the completion of his prison term but while on supervised release was still a "prisoner in custody" within the meaning of Section 2255)).)

C.      **Petitioner's Motion to Reopen.**

On an unknown date, Petitioner filed a motion to reopen his deportation case.  On June 12, 2006, Immigration Judge Chew granted Petitioner's motion to reopen.  In the order, there is a handwritten notation that the "[r]ecord demonstrates that respondent did not receive notice." (Order of the Immigration Judge, Pet'n for Habeas Petition, Ex. S.)  The Government did not initially oppose Petitioner's motion to reopen.  (See id. (noting "[n]o opposition by DHS").  On or about January 24, 2007, however, the Government filed an untimely motion to reconsider the grant of the motion to reopen before the Board of Immigration Appeals ("BIA").  (Mot. to Reconsider, Pet. for Habeas Petition, Ex. T.)  On or about August 1, 2007, the BIA denied the

5

Government's motion.

Immigration proceedings are currently pending. Upon representation by counsel for the Government in this matter, a hearing on Petitioner's immigration case was scheduled for September 14, 2007. (Gov't Mem. in Opp. To Def.'s Mot. 3 & n.2.) The hearing apparently was continued at the request of Petitioner's counsel because there are no teleconferencing abilities at the facility where Petitioner is currently being held in Gadsden, Alabama. (Id.)

**D.     Petitioner's Motion Pursuant to 28 U.S.C. § 2241.**

Following the grant of his motion to reopen, Petitioner filed a pro se petition for habeas corpus pursuant to 28 U.S.C. § 2241 on July 11, 2006 in the U.S. District Court for the District of New Jersey. In his § 2241 petition, Petitioner challenged the execution of his sentence on the grounds that he did not receive notice of his deportation hearing and noted that immigration proceedings were ongoing. The district court dismissed his habeas petition without prejudice for failure to exhaust administrative remedies as required under § 2241. Davis v. Samuels, Civ. No. 06-3165, 2006 U.S. Dist. LEXIS 63014 (D.N.J. Aug. 17, 2006) (Hillman, J.).

**E.     Petitioner's Motion Pursuant to 28 U.S.C. § 2255.**

On September 12, 2006, Petitioner filed a pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The matter was reassigned to this court on October 4, 2006. On December 13, 2006, the court ordered Petitioner to resubmit his petition on the most recent standard § 2255 form so that Petitioner would be made aware of the specific warnings required by the Third Circuit to be given at the commencement of any 28 U.S.C. § 2255 habeas

case.  See United States v. Thomas, 221 F.3d 430, 436 (3d Cir. 2000) (relating to the strict and short statute of limitations that exists for filing a 28 U.S.C. § 2255 petition); United States v. Miller, 197 F.3d 644, 652 (3d Cir. 1999) (relating to the strict restrictions on filing a second or successive 28 U.S.C. § 2255 petition).  The court also appointed Petitioner's former trial counsel to represent him.

On January 16, 2007, Petitioner resubmitted his § 2255 petition on the current standard form.  Petitioner's appointed counsel requested a sixty-day extension of time to file a supplemental petition, which the court granted.  In March of 2007, Petitioner's trial counsel requested permission to withdraw as counsel, which the court granted.  The court then appointed two new counsel to represent Petitioner.  After requesting two extensions of time in which to file a submission, Petitioner's counsel filed a supplemental petition on June 22, 2007.  On June 25, 2007, the court ordered Petitioner to elucidate the specific issues raised in his habeas petition.  On July 10, 2007, Petitioner filed his counseled response.  On September 21, 2007, the Government filed its response in opposition to Petitioner's § 2255 motion.

## II.  Discussion

In his pro se § 2255 motion, Petitioner argues that his conviction should be vacated because the underlying deportation procedure had been reopened by an Immigration Judge, which reopening Petitioner contends had the effect of invalidating his conviction for illegal entry.

Petitioner's counseled supplemental petition raises the argument of ineffectiveness of Petitioner's trial counsel in the illegal reentry proceedings.  Petitioner further argues that the underlying deportation process was procedurally flawed because the INS failed to provide

Petitioner with adequate notice of the merits hearing on his Section 212(c) claim for relief from deportation, such that Petitioner was not able to attend the hearing and defend against the deportation charge.  He contends that his trial counsel was ineffective for failing to investigate properly the facts underlying the deportation process and challenge the deportation element of the illegal entry charge in a motion to dismiss the indictment.  Petitioner argues that trial counsel's failure to apprise him of the procedural flaws in the deportation process and of his right to challenge the underlying deportation in the illegal reentry criminal case rendered his guilty plea involuntary and unknowing.  He therefore argues that his conviction for illegal reentry should be vacated.

Petitioner thus raises two distinct, albeit inter-related, issues: (1) whether Petitioner is permitted to attack collaterally his previous deportation order or proceeding on the basis that his motion to reopen has been granted, and (2) whether Petitioner is entitled to relief under § 2255 due to ineffectiveness of counsel for trial counsel's failure to investigate and challenge the underlying deportation in the illegal reentry case and to apprise Petitioner of issues regarding his deportation.  A third issue raised is whether Petitioner's § 2255 is barred by the applicable one-year statute of limitations.

**A.     Petitioner's Collateral Challenge to his Prior Deportation.**

In a prosecution under 8 U.S.C. § 1326, the government must prove as one element of its case that the defendant was deported, but need not prove that the deportation was lawful.  The Supreme Court in United States v. Mendoza-Lopez held that a defendant charged under 8 U.S.C. § 1326 for illegal reentry is entitled to challenge collaterally the fundamental fairness of the

deportation proceeding on due process grounds "where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." 481 U.S. 828, 834-37 (1987).

In interpreting Mendoza-Lopez, the Third Circuit established a three-part test that a defendant must meet to challenge collaterally a deportation order or proceeding. United States v. Charleswell, 456 F.3d 347, 351 (3d Cir. 2006). "The alien must establish that (1) he exhausted any administrative remedies that may have been available; (2) the hearing effectively eliminated the right of the alien to obtain judicial review from that proceeding; and (3) the prior hearing was 'fundamentally unfair.'" Id. (citing United States v. Torres, 383 F.3d 92, 98-99 (3d Cir. 2004)).

Congress codified these requirements when it enacted 8 U.S.C. § 1326(d) in 1996. Section 1326(d) provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that – (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). "[A]ll three [requirements] must be met before an alien will be permitted to mount a collateral challenge to the underlying removal order." Torres, 383 F.3d at 99.

The Government argues that Petitioner's collateral attack of his deportation is not permitted at this time because his immigration proceedings, following the grant of his motion to reopen, are ongoing and that Petitioner has therefore failed to satisfy the exhaustion of administrative remedies requirement under Section 1326(d)(1).

Petitioner relies on United States v. Dorsett, 308 F. Supp. 2d 537 (D.V.I. 2003), United States v. Muro-Inclan, 249 F.3d 1180 (9th Cir. 2001), and United States v. Aquirre-Tello, 324

F.3d 1181 (10th Cir. 2003), in arguing that all elements of Section 1326 have been met, including the exhaustion requirement. These cases stand for the proposition that the exhaustion requirement "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process." Muro-Inclan, 249 F.3d at 1183 (holding that failure to inform the defendant of his eligibility for a waiver constituted a denial of due process that excused the exhaustion requirement); see Aquirre-Tello, 324 F.3d at 1189 (finding that defendant's due process rights were violated by the immigration judge's failure to give him an adequate explanation of the discretionary relief available to him, which deprived him of his right to appeal, and holding that such a deprivation could not bar his collateral attack), vacated, United States v. Aguirre-Tello, 353 F.3d 1199, 1200-01 (10th Cir. 2004) (en banc); Dorsett, 308 F. Supp. 2d at 542 (following Muro-Inclan and Aquirre-Tello to excuse the exhaustion requirement where, due to errors by the immigration court and defendant's attorney, defendant's motion to reopen was never considered).

The cases cited by Petitioner are inapposite. Petitioner has not been precluded from pursuing his administrative remedies. Indeed, an Immigration Judge has reopened the deportation proceedings, which are currently pending, and there is no suggestion that such proceedings are inactive, stalled, or otherwise not moving forward.

It is clear that Petitioner has not exhausted his administrative remedies. Contrary to Petitioner's pro se argument, the grant of the motion to reopen does not vacate the prior underlying order of deportation. Although the Immigration Court granted Petitioner's motion to reopen, a hearing on the merits of Petitioner's claim must still be held so that that court can determine the following issues of fact and law: (1) whether Petitioner did not receive adequate

notice of the deportation hearing in question, whether any failure to provide notice deprived Petitioner of due process, and whether his initial order of deportation should be vacated; and (2) if his order of deportation should be vacated, whether he is entitled to relief from deportation under Section 212(c) of the INA or if entry of a new order of deportation is warranted.  The exhaustion requirement also may require appeal to the BIA.

The resolution of these issues are dispositive of the issues presented in Petitioner's § 2255 motion; specifically, whether the deportation proceedings improperly deprived Petitioner of judicial review and whether the entry of the deportation order was fundamentally unfair.  See 8 U.S.C. § 1326(d).  Here, enforcement of the exhaustion of administrative remedies requirement allows the immigration court to develop a factual record and apply its expertise to a matter to which it is uniquely suited and statutorily enabled, and promotes judicial economy.  The court therefore holds the present case in abeyance until Petitioner's administrative remedies have been exhausted.

**B.     Petitioner's Ineffective Assistance of Counsel Claims.**

There is a two-part test to determine whether a defendant was denied effective assistance of counsel.  To prevail the defendant must establish that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  The Petitioner must establish that there is a reasonable probability that, but for unprofessional errors, the result would have been different.  Id.  In assessing whether counsel was competent, judicial scrutiny of an attorney's performance must be highly deferential. Id. at 689.

The voluntariness of a guilty plea is contingent upon whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970). The two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 57-58 (1985). To show prejudice, the defendant must prove that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have succeeded at trial, or that the outcome of proceedings would have been different. Id. at 59 (explaining that to show prejudice for counsel's failure to advise defendant of a potential affirmative defense, defendant must show that counsel likely would have changed his plea recommendation and that the affirmative defense likely would have succeeded at trial); United States v. Nino, 878 F.2d 101, 105-06 (3d Cir. 1989) (holding that to show prejudice for counsel's failure to advise defendant of the deportation consequences of his guilty plea, defendant must show that he likely would not have pled guilty and that the outcome of the proceedings likely would have been different).

Petitioner's arguments that his trial counsel was ineffective because he failed to inform Petitioner that he could challenge his deportation, which allegedly rendered his guilty plea involuntary, and failed to challenge the underlying deportation turn on whether the elements of Section 1326(d) are met. See 8 U.S.C. § 1326(d). Assuming that counsel's performance was deficient, to demonstrate prejudice Petitioner must show that there is a reasonable probability that a collateral attack on the deportation order would have been successful, the analysis of which is governed by Section 1326(d).

Likewise, the prejudice showing for Petitioner's guilty plea challenge turns on Section 1326(d) because the determination of the merits of a defendant's collateral attack on a prior

12

deportation is for the judge, not the jury.  See Mendoza-Lopez, 481 U.S. at 838; United States v. McCalla, 821 F. Supp. 363, 367 (E.D. Pa. 1993).  A collateral attack on the underlying deportation constitutes a challenge to one of the elements pleaded in the indictment and must be raised by way of a pretrial motion to dismiss the indictment.  See id.  Thus, assuming that counsel's performance was deficient and that, but for this deficient performance, Petitioner would not have pled guilty, Petitioner must still show that there is a reasonable probability that a collateral challenge to his deportation before the judge, and not the jury at trial, would have been successful.

Had Petitioner's trial counsel raised a collateral attack on the prior deportation, the judge would have had to determine whether the exhaustion of administrative remedies requirement under Section 1326(d) had been met.  Petitioner argues that had trial counsel raised a collateral attack, he likely would have prevailed.  He argues the judge likely would have relied on cases such as United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001) (holding that the exhaustion requirement "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process"), and United States v. Aquirre-Tello, 324 F.3d 1181 (10th Cir. 2003), explained above, to find that the exhaustion requirement had been met because Petitioner had been deported *in absentia* allegedly without notice of his right to appeal in violation of his due process rights.

It is far from certain, however, that the district judge would have followed this non-controlling authority.  The Tenth Circuit vacated its opinion in Aquirre-Tello, 324 F.3d 1181, and declined to address the issue of exhaustion.  United States v. Aguirre-Tello, 353 F.3d 1199, 1200-01, 1204 n.5 (10th Cir. 2004) (en banc); see Essuman v. Gonzales, 203 Fed. Appx. 204,

210 (10th Cir. 2006) (noting that Aquirre-Tello, 324 F.3d 1181, was vacated). The Ninth Circuit's interpretation of Section 1326(d) has been more expansive than any other court of appeals. See Brent S. Wible, The Strange Afterlife of Section 212(c) Relief: Collateral Attacks on Deportation Orders In Prosecutions for Illegal Reentry After St. Cyr, 19 Geo. Immigr. L.J. 455, 473-75 (2005) (comparing approaches to Section 1326(d) across the circuit courts). The Ninth Circuit's approach essentially collapses the first and second prongs of Section 1326(d) into a general fairness inquiry, by applying the same analysis to the exhaustion requirement and to whether the defendant was deprived of judicial review. See Muro-Inclan, 249 F.3d at 1183-84; see also United States v. Ubaldo-Figueroa, 347 F.3d 718, 726 (9th Cir. 2003) (holding that "failure to exhaust cannot bar collateral review of a deportation order when the waiver of the right to an administrative appeal was not considered and intelligent"); but see United States v. Etienne, No. 3-03-cr-190, 2004 U.S. Dist. LEXIS 11547, at *12-13 (D. Conn. June 23, 2004) (criticizing the Ninth Circuit's approach for ignoring the express statutory language of Section 1326(d) setting forth the exhaustion requirement).

Although the Third Circuit has not squarely addressed the issue of whether the exhaustion requirement is excused where a defendant was deported *in absentia* and not informed of his right of appeal, the Third Circuit has interpreted strictly the statutory requirement for exhaustion of administrative remedies in other immigration contexts. See Bonhometre v. Gonzales, 414 F.3d 442, 447-48 (3d Cir. 2005) (denying a petition for review, in which petitioner argued that he was denied due process rights when the immigration judge failed to advise him that he would seek relief from removal under Sections 212(c) and 212(h) and other relief, because petitioner failed to bring his procedural due process claims of error before the BIA and thus failed to exhaust

administrative remedies as required by 8 U.S.C. § 1252(d)(1)); see also United States v. Charleswell, 456 F.3d 347, 354-56 (3d Cir. 2006) (declining to reach "whether the mere lack of notice concerning the right to take a direct appeal from an administrative order can ever be considered an effective denial of meaningful judicial review" for purposes of a collateral attack, and not addressing the exhaustion requirement).

In the absence of controlling Third Circuit authority, it is not necessary for the court to decide the issue, given the specific facts of this case.  As of October 16, 2003, when Petitioner pled guilty to the reentry charge, Petitioner had not filed a motion to reopen.  As Petitioner concedes, "[t]he fact that the motion to reopen was successful is evidence that the legal authority to reopen the old deportation order existed.  The authority to reopen was as available to counsel for Petitioner . . . in 2003 as it was in 2006 when [Petitioner] used it in his Motion to Reopen." (Pet'r Resp. to the Court's Request on Pet'r's Pet. for Habeas Corpus 2.)

Just as the court cannot conclude today that Petitioner has exhausted his administrative remedies because proceedings following his motion to reopen are pending, the court cannot conclude that the district judge likely would have found that Petitioner had exhausted his administrative remedies in October of 2003 because he had not filed an appeal with the BIA or a motion to reopen, when the legal authority to do so existed.  Nor is it reasonable to conclude that, had Petitioner filed a motion to reopen at the time, the district court would have stayed criminal proceedings on the illegal reentry charge until administrative remedies were exhausted.

The court therefore cannot find that it was reasonably probable that the trial judge would have excused the exhaustion requirement.  Because Petitioner cannot show that all of the elements under Section 1326(d) likely could have been met, Petitioner fails to demonstrate that

there is a reasonable probability that a collateral attack on the deportation order would have been successful. Petitioner therefore cannot show the element of prejudice required for his ineffective assistance of counsel claims. His ineffectiveness of counsel claims thus fail.

**C.     Statute of Limitations.**

It is undisputed that Petitioner filed his § 2255 motion after the expiration of the one-year statute of limitations under 28 U.S.C. § 2255. Petitioner argues that equitable tolling applies to prevent his claim from being time-barred.

The Third Circuit has held that AEDPA's statute of limitations is subject to equitable tolling. LaCava v. Kyler, 398 F.3d 271, 275 (3d Cir. 2005) (citing Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 617 (3d Cir. 1998)). The time for filing a habeas petition may be equitably tolled if petitioner shows that (1) respondent has actively misled the petitioner; (2) the petitioner has in some extraordinary way been prevented from asserting his or her rights; or (3) the petitioner has timely asserted his or her rights in the wrong forum. Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) (quoting Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999)), cert. denied, 534 U.S. 944. The second prong is at issue here.

> Equitable tolling is allowed "only in the rare situation where . . . [i]t is demanded by
> 
> sound legal principles as well as the interests of justice . . . [and] only when the
> principles of equity would make the rigid application of a limitation period unfair.
> Generally, this will occur when the petitioner has in some extraordinary way been
> prevented from asserting his or her rights. The petitioner must show that he or she
> exercised reasonable diligence in investigating and bringing the claims."

Schlueter v. Varner, 384 F.3d 69, 75-76 (3d Cir. 2004) (citations and quotations omitted), cert. denied, 544 U.S. 1037 (2005); see Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("Generally, a

litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.").

The petitioner bears the burden of proof as to all facts, procedural and substantive, demonstrating entitlement to relief.  Brown v. Cuyler, 699 F.2d 155, 158 (3d Cir. 1982).  "Mere excusable neglect is not sufficient."  Miller, 145 F.3d at 619.  "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."  Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

In light of the court's holding of this matter in abeyance until the exhaustion of Petitioner's administrative remedies, the court will not reach the issue of whether Petitioner is entitled to equitable tolling.  The statute of limitations issue is stayed pending the outcome of the administrative process.

### III.  Conclusion

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate, Set Aside or Correct Sentence shall be held in abeyance until the conclusion of pending immigration proceedings.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE PAUL DAVIS, | : | CIVIL ACTION |
| | : | |
| Petitioner, | : | NO. 06-cv-04079 |
| | : | |
| v. | : | |
| | : | CRIMINAL ACTION |
| UNITED STATES, | : | |
| | : | NO. 03-cr-484 |
| Respondent. | : | |

**ORDER**

AND NOW, this 8th day of November, 2007, upon consideration of Petitioner Andre Paul Davis' Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. Nos. 28, 32, 45, 46), Petitioner's Response to the Court's Request on Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2255 and Supporting Memorandum of Law (Doc. No. 49), and the Government's Response in opposition thereto (Doc. No. 52), it is hereby ORDERED for the reasons set forth in the attached memorandum as follows:

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 shall be HELD IN ABEYANCE pending Petitioner's exhaustion of his claims in immigration court proceedings.

2. Petitioner shall notify the court that the immigration court proceedings are concluded and that the case is ready to proceed in this court within thirty (30) days of the conclusion of those proceedings.

BY THE COURT:
    S/ James T. Giles
                J.